## Home for Colored Children, Appellant, v. The Directors of the Poor and the House of Employment of Cambria County.

*Constitutional law—Directors of the bureau—Liability for maintenance of pauper children—Incorporated home.*

There is nothing in Section 7, Article IX, of the Constitution of Pennsylvania, prohibiting the legislature from authorizing any municipality to become a stockholder in or to lend its credit to any corporation, etc., which would prevent the directors of the poor of a county, from placing pauper children of their district in an incorporated home, or release them from liability for their maintenance. Such an action is not lending the credit of the municipality to or becoming a stockholder of such a corporation, but merely establishes a contractual relation between the home and the directors of the poor, for which the latter are responsible.

Argued April 21, 1919. Appeal, No. 117, April T., 1919, by plaintiff, from judgment of C. P. Cambria County, December T., 1915, No. 247, directing a verdict in favor of the defendant in the case of Home for Colored Children, a Corporation, v. the Directors of the Poor and the House of Employment of Cambria County. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Assumpsit for maintenance of pauper children. Before O'CONNOR, J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the defendant on the ground that the directors of the poor were not liable for the maintenance of the children, as committed, under the provisions of Section 7, Article IX, of the Constitution of Pennsylvania. Plaintiff appealed.

*Error assigned,* among others, was in giving binding instructions for the defendant.

*A. H. Mercer,* and with him *Clarence E. Davis,* for appellant.—There is nothing in the Constitution prohibiting the board of poor directors from making a contract with the plaintiff, or relieving them for their liability thereunder: Act of June 3, 1883, P. L. 111; Act of May 7, 1907, P. L. 170; Brode v. Philadelphia, 230 Pa. 449; Kennedy v. Meyer, 259 Pa. 306.

*John E. Evans,* and with him *Charles S. Evans,* for appellee.

Opinion by Orlady, P. J., July 17, 1919:

This plaintiff is a corporation of the first class, duly organized under the laws of this Commonwealth, its charter providing, "Second. The object for which this Association is formed is to provide a home for orphan, friendless, destitute, neglected, or ill-treated colored children and to maintain, protect and educate the same and for this purpose, this Association shall have the right to receive such children upon Indenture from their parents or guardians, or may act as guardians of the person of any infant committed to its charge under and by virtue of the Act of Assembly of May 24, 1878, or may receive such children upon indenture from the overseers, guardians or directors of the poor of any Municipality as provided for by the Act of Assembly of May 25, 1878, and said Corporation is hereby authorized to bind-out and provide suitable homes for all children committed to its charge when maintenance is unprovided for by their parents or guardians."

The defendants are the duly constituted directors of the poor of Cambria County, being charged by law with the care, maintenance and education and oversight of the indigent poor of that county, as follows: Eighth Section of the Act of May 8, 1876, P. L. 150, 1 Stewart's Purdon 305, "When they shall deem proper and convenient to do so, to administer relief to any person in need of assistance, or to permit any person or persons to be maintained

elsewhere, provided their expense in any case does not exceed that for which they could be maintained in said home." On December 21, 1909, these defendants had in their charge and legal custody as paupers, Rachel A. Robinson, widow (colored), and her two minor sons, Thomas, born December 17, 1902, and Harry, born May 3, 1905, "as proper inmates of the County Home," all of whom were dependent on the County of Cambria for care, maintenance, custody and education. It was the custom of the defendant in compliance with their legal duty, to place its pauper children of tender years in an institution or a private family. On October 19, 1909, John A. Gray, the steward of the Cambria County almshouse, acting in behalf of the board of directors of the poor, wrote to the Colored Childrens' Home, Allegheny, Pennsylvania, viz: "We have two colored children in our county home whom we would be pleased to place in a home; they are four and seven years. Kindly let me know if you will receive them." Pursuant to this inquiry, applications for admission to the home were sent to the steward of the almshouse and a questionnaire was filled out by him stating the residence of the mother to be Ebensburg, Cambria County, and that she could not furnish any support for the children. The children were soon thereafter delivered to the plaintiff home by one of the directors of the poor, and remained therein for about four years, after which a demand was made by the plaintiff on the defendants for reasonable compensation for their maintenance. This was refused and this action of assumpsit was brought. The court below was of the opinion that the plaintiff was not entitled to recover and directed a verdict for the defendants relying on Wilkes-Barre Hospital v. County of Luzerne, 84 Pa. 55, as authority for his conclusion, and quoting, "A law enabling a private incorporated hospital to make requisitions upon a county, for the payment of its charges for the support of patients under treatment, even though they be paupers, is an ap-

propriation of money by the county to the corporation, and comes within the prohibition of the Constitution."

The duty of the poor directors of Cambria County is measured by the provisions of the Act of June 3, 1883, P. L. 111, 2 Stewart's Purdon, 1887 (13th ed.), the second section of which provides as follows: "It shall be the duty of said overseers or other persons having charge of the poor, to place all pauper children who are in their charge and who are over two years of age (with the exception named in the first section of this act), in some respectable family in this State, or in some educational institution or some home for children; and one of said officers shall visit such children in person or by agent not less than once every six months, and make all needful inquiries as to their welfare and treatment, and shall report thereon to the board of overseers or other officers charged with the care of such children."

If the defendants' theory was adopted they could transfer the pauper minors to any incorporated home that would receive them, and relieve Cambria County from the burden of their further maintenance as imposed by law. The duty to care for such paupers carries with it an obligation to pay for such care and maintenance.

The plaintiff is a home, incorporated exclusively for the care and maintenance of colored children. It is under the control of managers who are elected annually, and is maintained by voluntary contributions from the general public and from sums received for the maintenance of such inmates as possess the means of payment. It is humanely, judiciously and economically managed, and through its ministrations this specially helpless class of dependents are receiving care, maintenance and education. Its accounts are inspected regularly through the auditor general's office, and it receives a small appropriation from the State, based on recommendations of the State Board of Charities, who regularly visit and inspect its management. This appropriation is purely a matter of grace on the part of the Commonwealth, and its

amount, whether large, small or nothing, is dependent entirely upon the will of the legislature.   This record shows that for two years the home did not receive any State aid. Children are committed to this institution by the Juvenile Court of Allegheny County, and some from other courts, institutions and societies throughout the State, and in all such cases a definite charge is made by the home and paid by the authorities sending the children. There is no suggestion of criticism as to the care of these children while in the custody of the plaintiff.   The purpose of the institution being, not only to take care of such children, but also to have parents or guardians share, when it is possible, in their maintenance.   It is conceded that the liability for the maintenance of the two colored children named in this record was primarily upon Cambria County, and that the poor directors would be obliged to pay for such care and maintenance if they had been placed by them in the home of an individual, or in an incorporated institution or home for children, under an arrangement similar to the one on which this action is based.   The poor directors could not change the place of settlement of these pauper children from Cambria to Allegheny County and relieve the home county from liability.   The liability of the directors of the poor of Cambria County should not be shifted to the charitably inclined donors of this home for colored children, and we do not feel that the case on which the court below relied exempts them from liability.   They were prohibited by law from keeping them in their own almshouse, and at their solicitation they were placed "in this home."

As stated in the original application by the steward, "Whom we would be pleased to place in a home," could only mean that Cambria County would bear the reasonable cost of their maintenance therein.   If this was not the intention, it should have been more clearly stated, when definite terms would have been specified, or the Cambria County children might have been refused.   The mere fact that the State legislature, after proper audit of

the accounts by the auditor general's office, and upon the recommendation of the State Board of Charities, volunteers to grant financial aid in the form of an appropriation to this home, does not relieve the poor directors of Cambria County from carrying its own burden. When these children had been placed in the plaintiff home, defendant overseers never visited them thereafter. The incorporation of such an institution is desirable from every viewpoint for efficient management, proper supervision of the children and administration of its funds, and it is a strained construction of Section 7, Article IX, of the Constitution, which reads as follows: "The General Assembly shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association, institution, or corporation, or to obtain or appropriate money for, or to loan its credit to any corporation, association, institution or individual," to hold, that a board of poor directors is wholly relieved for all liability for their maintenance if it can induce such a home to receive its pauper subjects under such facts as are herein disclosed. It is neither just nor lawful to hold that this corporation is precluded from recovering for the care and maintenance these children from parties able and legally liable to pay. It surely was not the intention of the poor directors to relieve Cambria County of all liability for these dependent colored children by transferring them to the home in Allegheny County and impose upon its incorporators, or its funds derived from voluntary contributions and bequests, the duty that the law imposes upon them.

All donations to this home lessen the necessity or propriety for calling on the Commonwealth for aid to maintain it. This case is radically different in its facts from Wilkes-Barre Hospital v. Luzerne County, supra. This is not a requisition under an act of assembly, as in that case, upon a county for payment of charges for the support of patients or inmates, but a demand for payment of an admittedly reasonable sum for the care and maintenance of

dependent children placed in its custody by the legally constituted authorities. The Constitutional provision does not prevent a corporation of this class from entering into contractual relations for legitimate purposes: Brode v. Phila., 230 Pa. 434. Had these children been placed "in some respectable family in the State or in some educational institution or some home for children" the defendants could not raise this question as they would be but following the plain mandate of their statutory duty. The fact that this home is incorporated does not change the law of the case.

The judgment is reversed, the record remitted with a procedendo.